# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 17-20078

———————

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JOSE HERRERA-ALVARADO, also known as Froilan Herrera-Alvarado, also known as Montera-Alvarado, also known as Eddie,

      Defendant - Appellant

———————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CR-44-2

———————

Before KING, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

    Jose Herrera-Alvarado ("Herrera")[1] appeals his guilty-plea conviction for conspiring to possess with intent to distribute heroin. Herrera waived his right to appeal as part of the plea agreement. Nevertheless, he contends for the first time on appeal that the Government breached two implied promises in the plea agreement and, therefore, that he should be permitted either to withdraw the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Herrera-Alvarado refers to himself as "Herrera" in his brief.

United States Court of Appeals
Fifth Circuit

**FILED**
May 3, 2018

Lyle W. Cayce
Clerk

plea or to specifically enforce it during a resentencing before a different judge.[2] Because we perceive no plain error, we DISMISS the appeal based on the plea agreement's appellate waiver provision.

## I. Background

A multi-count superseding indictment charged Herrera and several others with crimes arising from a long-running conspiracy to possess with intent to distribute controlled substances. Pursuant to a written plea agreement, Herrera pleaded guilty to Count One, which charged a conspiracy to possess with intent to distribute heroin.

Herrera's plea agreement waived his right to appeal, preserving only the right to assert ineffectiveness of counsel. It further provided, in relevant part, that "[a]t the time of sentencing, the United States agrees to recommend that the defendant receive a two (2) level downward adjustment pursuant to [U.S. Sentencing Guidelines Manual] Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines." If Herrera qualified for the acceptance of responsibility adjustment, the Government offered to recommend an additional one level reduction "based on the timeliness of the plea which allowed the government to efficiently allocate its resources," so long as the offense level was greater than 16. The agreement also stated that "the United States reserves the right . . . to set forth or dispute sentencing factors or facts material to sentencing."

The presentence report ("PSR") calculated a total offense level of 46 under the 2015 U.S. Sentencing Guidelines Manual ("U.S.S.G."), but it was reduced to a maximum level of 43 under the Sentencing Guidelines. The offense level included an increase of two levels for obstructing justice. In support of the obstruction of justice recommendation, the PSR described a post-

---

[2] Herrera does not challenge the validity of the waiver as such, only arguing that it is void because of a subsequent breach of the plea agreement.

arrest proffer interview in which a coconspirator and potential witness, Aaron Cervantes, stated that immediately after the arrest Herrera told him not to cooperate with law enforcement, warned him about being labeled a "rat" if he did talk to law enforcement, and promised to pay lost income to Cervantes because of his arrest.

The patrol car in which the obstructive conduct occurred had a recording system that recorded the conversation, and the Government provided the audio recording to the defense. Prior to entering into the plea agreement, the Government notified Herrera's defense counsel of this evidence and that the United States Probation Office might use it to argue for an obstruction of justice finding, which "might also knock out acceptance of responsibility." The Government's email to defense counsel also said, "I've left it out of the factual basis so we can make our respective arguments at sentencing." Later that month, Herrera signed the plea agreement.

As a result of the increase for obstruction of justice, the PSR declined to recommend any credit for acceptance of responsibility because note 4 in the commentary to U.S.S.G. § 3E1.1 states that obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," except in "extraordinary cases," and the PSR found "nothing extraordinary in this case." Herrera objected to the PSR, in pertinent part, by arguing that his offense level should not have been increased for obstruction of justice and that the PSR should not have recommended withholding credit for acceptance of responsibility on account of the obstruction increase. The Government filed a response in support of the PSR's recommendation, arguing that Herrera attempted to obstruct justice and was thus not entitled to credit for acceptance of responsibility. The PSR remained unchanged with respect to the obstruction justice and acceptance of responsibility recommendations.

At sentencing, Herrera again contested the obstruction increase and

No. 17-20078

denial of credit for acceptance of responsibility, and the Government again argued in support of both determinations. The Probation Officer added that, because Herrera had received the obstruction increase, even with a three-level acceptance of responsibility decrease his offense level would still be the maximum of 43.

The district court adopted the PSR and determined that Herrera's offense level was 43 and his criminal history category was II, resulting in an advisory Guidelines range of life. The court sentenced Herrera to life in prison, and in its explanation stated, among other things, that a sentence within the Guidelines range was appropriate because Herrera had obstructed justice. Following the announcement of the sentence, the Government asked the following question: "Would the Court have made the same finding as to the sentence of life imprisonment notwithstanding some of the objections on the enhancements we've been going over?" The court responded, "Yes, I would." Herrera filed a timely notice of appeal.

## II. Standard of Review

We review for plain error because Herrera did not assert his claim of a breached plea agreement in the district court. *See United States v. Cluff*, 857 F.3d 292, 297 (5th Cir. 2017) ("A claim that the government breached the plea agreement is reviewed *de novo* unless the defendant failed to preserve his objection, in which case the claim is reviewed for plain error."). "[T]he burden of establishing entitlement to relief for plain error is on the defendant claiming it." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004). To establish plain error, Herrera "must show (1) an error (2) that was clear or obvious (3) that affected his substantial rights." *United States v. Avalos-Martinez*, 700 F.3d 148, 153 (5th Cir. 2012) (per curiam). If Herrera establishes plain error, "we have the discretion to correct the error if it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Puckett v.*

4

No. 17-20078

*United States*, 556 U.S. 129, 135 (2009)).

### III. Discussion

Herrera argues that the appeal waiver is void and that we should vacate and remand his sentence because the Government breached two implied promises in the plea agreement: (1) that the Government would not seek an obstruction of justice enhancement based on pre-plea conduct; and (2) that, even if Herrera received a two-level obstruction of justice enhancement for pre-plea conduct, "the Government would not seek to deny acceptance of responsibility . . . based on that pre-plea conduct."[3] We hold that (1) there was no implied promise that the Government would not seek an obstruction of justice enhancement based on pre-plea conduct, and (2) any error related to the alleged breach for seeking to deny credit for acceptance of responsibility did not affect Herrera's substantial rights because it would not have changed the Guidelines range of life imprisonment. Accordingly, we dismiss the appeal based on the plea agreement's waiver provision.

As an initial matter, the waiver provision does not preclude Herrera's ability to argue on appeal that the Government breached the plea agreement. "An 'alleged breach of a plea agreement may be raised despite a waiver provision.'" *United States v. Purser*, 747 F.3d 284, 289 (5th Cir. 2014) (quoting *United States v. Pizzolato*, 655 F.3d 403, 409 (5th Cir. 2011)). Moreover, "when the Government breaches a plea agreement, the defendant is 'necessarily released from an appeal waiver provision contained therein.'" *Id.* at n.11 (quoting *United States v. Gonzalez,* 309 F.3d 882, 886 (5th Cir. 2002)).

---

[3] Herrera also articulates the second implied promise as requiring affirmative action by the Government: "[I]f Mr. Herrera did receive a two-level enhancement for obstruction of justice on the basis of the statements [he] made to Cervantes, the Government would nevertheless recommend the three-level reduction for acceptance of responsibility since it was aware of that conduct when it entered into the plea agreement with Mr. Herrera."

When interpreting plea agreements, we apply general principles of contract law. *Cluff*, 857 F.3d at 298. "To determine whether the terms of the plea agreement have been violated, [we] must consider 'whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement.'" *Id.* (quoting *Pizzolato*, 655 F.3d at 409). Both express and implied terms should be considered. *Id.* "The plea agreement is construed strictly against the Government," but "[t]he defendant has the burden of demonstrating the underlying facts that establish the breach by a preponderance of the evidence." *Purser*, 747 F.3d at 290.

Where, as here, the plea agreement reserves the Government's right "to set forth or dispute sentencing factors or facts material to sentencing," the Government is generally entitled to seek an obstruction of justice enhancement so long as it has not already stipulated to the total offense level and set forth specific enhancements that would apply to the defendant's sentence. *See Cluff*, 857 F.3d at 300 (distinguishing *United States v. Munoz*, 408 F.3d 222 (5th Cir. 2005)). Note 4 in the commentary to U.S.S.G. § 3E1.1 states that an obstruction of justice finding "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," except in "extraordinary cases." Accordingly, we have noted that "[a]n obstruction of justice charge almost always necessarily militates against an acceptance of responsibility recommendation by the government and a sentence reduction by the district court." *Id.* at 298 (quoting *United States v. Quintero*, 618 F.3d 746, 751–52 (7th Cir. 2010)). We also held in *Cluff* that the Government is entitled to abstain from recommending credit for acceptance of responsibility where, as here, the plea agreement "conditions the Government's obligation to recommend acceptance credit on the defendant 'accepting responsibility as contemplated by the Sentencing Guidelines,' and the defendant fails to do so" by obstructing justice, and it is not an extraordinary case. *See id.* at 299–301.

Herrera acknowledges the holding in *Cluff*, but he argues that *Cluff* is distinguishable because, there, the predicate conduct occurred after the plea agreement. By contrast, here, the conduct supporting the finding that Herrera obstructed justice occurred prior to the plea agreement, and the parties were aware of the conduct when they entered into the plea agreement.

The evidence shows that the Government notified Herrera a few weeks prior to signing the plea agreement that the obstruction of justice evidence was omitted from the factual basis so that the parties could make their respective arguments at sentencing. Indeed, the plain language of the plea agreement and the surrounding circumstances at sentencing confirm this understanding of the plea agreement. There are no provisions in the plea agreement imposing limitations on seeking an obstruction of justice enhancement, and the provision reserving the Government's right "to set forth or dispute sentencing factors or facts material to sentencing" is broad enough to cover pre-plea conduct relating to an obstruction of justice enhancement. *See id.* at 300 (concluding that "[t]his provision is broad enough to cover enhancements such as the one at issue here regarding obstruction of justice" and "the Government was entitled to . . . recommend enhancements not specifically mentioned in the plea agreement"). Moreover, if, as Herrera asserts, he relied on this supposed implicit promise at the time he agreed to the plea agreement's terms, one would have expected him to object at the sentencing hearing on this basis. Indeed, he had ample notice that the Government would argue for obstruction of justice at sentencing; it sent an email a few weeks prior to executing the plea agreement indicating it would make this argument at sentencing and then made the argument in response to Herrera's objections to the PSR's recommendations. Accordingly, similar to *Cluff*, "[b]ecause [Herrera's] agreement did not stipulate to a total offense level, the Government was

entitled to . . . recommend enhancements not specifically mentioned in the plea agreement," including enhancements based on pre-plea conduct. *See id.*

Absent any case law to support his position, Herrera appeals to reason. He contends that without an implied promise to not rely on pre-plea conduct in arguing for an obstruction of justice finding, the promise to recommend credit for acceptance of responsibility "conferred no benefit since an obstruction of justice finding would foreclose a reduction for acceptance of responsibility." This argument is based on two faulty assumptions. It assumes that the district court will (1) always conclude that pre-plea conduct constitutes obstruction of justice when the Government makes such arguments and (2) never award credit for acceptance of responsibility after it makes an obstruction of justice finding. But the district court does not have to accept the Government's argument, and the Government is free to still seek credit for acceptance of responsibility despite such a finding. Indeed, Herrera ignores that in "extraordinary cases" credit for acceptance of responsibility is still appropriate despite an obstruction of justice finding. *See* U.S.S.G. § 3E1.1 cmt. n.4. His own conduct at sentencing bears this out: Herrera argued against an obstruction of justice finding and in favor of a determination that credit for acceptance of responsibility should nevertheless be granted even if the enhancement was applied. Thus, because there remained a chance that Herrera might receive credit for acceptance of responsibility despite the Government's right to seek an obstruction of justice enhancement based on pre-plea conduct, he still received a benefit, even if that benefit was somewhat limited by the risk associated with the pre-plea conduct.

Because the Government did not breach the plea agreement by seeking the obstruction of justice enhancement, any error related to seeking denial of credit for acceptance of responsibility did not affect Herrera's substantial rights. Herrera's offense level would, at best, be reduced from 46 to 43 if he

received both credit for acceptance of responsibility and the obstruction of justice enhancement. This is the same maximum offense level resulting in his current Guidelines range and sentence. Accordingly, his substantial rights would not be affected by any error related to the denial of credit for acceptance of responsibility. *See United States v. Garcia-Gonzalez*, 714 F.3d 306, 317 (5th Cir. 2013) (holding that the defendant "cannot show an error that affected his substantial rights because he would have received the same Guidelines range and sentence").

Even if there were plain error, we would not exercise our discretion to correct the error. Declining to correct the error would not result in a miscarriage of justice. *See United States v. Escalante-Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) (en banc) ("[T]he discretion conferred by Rule 52(b) should be employed in those circumstances in which a miscarriage of justice would otherwise result." (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). Even applying a "rebuttable presumption" that a plea agreement breach satisfies the fourth prong, we find it rebutted here given the particular circumstances described above, specifically, the Government's explicit reference to the audio recording and the issue of Herrera's pre-plea conduct. *Cf. United States v. Kirkland*, 851 F.3d 499, 505 (5th Cir. 2017) (recognizing a rebuttable presumption that breaching a plea agreement satisfies the fourth prong of the plain error test because it is a "particularly egregious error").

DISMISSED.